```
            IN THE UNITED STATES DISTRICT COURT
               FOR THE DISTRICT OF MARYLAND


BRYANT MOORE et al.          *
                             *
v.                           *   Civil Action No. WMN-15-620
                             *
PAUL EDWARD KOCH, II         *

     *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *
```

## MEMORANDUM

Plaintiffs brought this action under the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 et seq., the Maryland Consumer Debt Collection Act, Md. Code, Com. Law § 14-201 et seq., and the Maryland Consumer Protection Act, Md. Code, Com. Law § 13-101 et seq. Plaintiffs acknowledge that in 2002, William Allen Barwick, Jr., obtained a judgment against them for unpaid rent in the amount of $11,896.16. Defendant is a debt collector and, on or about May 6, 2014, he sent Plaintiffs a letter for the purpose of collecting on that judgment, with interest. Defendant sent an additional collection letter on June 11, 2014, and filed a request for the garnishment of Plaintiff Sherri Moore's wages on January 8, 2015. Plaintiffs allege that Defendant made false and misleading representations in these collection efforts. Also alleging that these are standard practices of Defendant in dealing with other debtors, Plaintiffs bring this action as a potential class action.

Defendant answered the Complaint and also asserted four counterclaims.  Defendant acknowledges that he has attempted to collect this debt which was assigned to him by Mr. Barwick.  He also asserts that Plaintiffs have filed numerous frivolous motions and appeals in Maryland courts and filed one or more frivolous complaints against him with various government agencies.  He further alleges that Plaintiffs threatened to file a lawsuit against him unless he stopped all collection efforts.  Based upon these allegations, Defendant asserts counterclaims for "Tortious Interference with Business Relations" (Count I), "Malicious Interference with the Right to Pursue a Lawful Business, Trade, or Occupation" (Count II), "Abuse of Process" (Count III), and "Set-off and/or Recoupment" (Count IV).

Plaintiffs have moved to dismiss the Counterclaim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, asserting that the facts alleged are insufficient to support these causes of action.  ECF No. 8.  Plaintiffs also suggest the "[t]he Court may also dismiss the Counterclaim under Fed. R. Civ. P. 12(b)(1) and in exercise of the discretion provided by 28 U.S.C. § 1367 to decline supplemental jurisdiction over the alleged counterclaims because they are permissive, not mandatory, and do not raise federal questions or invoke jurisdiction under 28

U.S.C. § 1331."[1]  ECF No. 8-1 at 1 n.1.  For the reasons stated below, the Court concludes that Counts I, II, and III are sufficiently related to the Plaintiffs' claims that they were properly asserted as compulsory counterclaims.  The Court also concludes, however, that as pled these counterclaims fail to state claims upon which relief could be granted.  The Court finds that Count IV of the Counterclaim is a permissive counterclaim over which the Court has no jurisdiction.

In cases such as this, where neither diversity nor federal question jurisdiction exists over the counterclaims, the Court must determine whether the counterclaims are "compulsory" or "permissive."  A compulsory counterclaim "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim," while a permissive counterclaim does not.  See Fed. R. Civ. P. 13(a)-(b).  A compulsory counterclaim is "within the ancillary jurisdiction of the court to entertain and no independent basis of federal jurisdiction is required." Painter v. Harvey, 863 F.2d 329, 331 (4th Cir. 1988).  By contrast, a permissive counterclaim that lacks its own independent jurisdictional basis is not within the jurisdiction of the court.  Id.

---

[1] Because 28 U.S.C. § 1331 addresses "federal question" jurisdiction, the Court assumes Plaintiffs intended to cite 28 U.S.C. § 1332, the section addressing the other primary source of this Court's jurisdiction, "diversity jurisdiction."

Determining whether counterclaims are compulsory or permissive requires four separate inquiries:

> (1) Are the issues of fact and law raised in the claim and counterclaim largely the same?
>
> (2) Would res judicata bar a subsequent suit on the party's counterclaim, absent the compulsory counterclaim rule?
>
> (3) Will substantially the same evidence support or refute the claim as well as the counterclaim? and
>
> (4) Is there any logical relationship between the claim and the counterclaim?

Id. at 331. The Fourth Circuit has instructed that it is not necessary to "answer all these questions in the affirmative for the counterclaim to be compulsory"; rather, the inquiries serve as a "guideline." Id. "Where . . . the same evidence will support or refute both the claim and counterclaim, the counterclaim will almost always be compulsory." Id. at 332. This "same evidence" test, however, is not "the exclusive determinant of compulsoriness under [Rule 13(a)] because it is too narrow a definition of a single transaction or occurrence." "A counterclaim may still arise from the same 'transaction or occurrence', as a logically related claim even though the evidence needed to prove the opposing claims may be quite different." Id. at 333.

Plaintiffs' claims and Defendant's first three counterclaims all relate to Defendant's efforts to collect the

4

debt that was assigned to him by Mr. Barwick.  Plaintiffs allege that these efforts were deceptive, misleading, and unlawful and Defendant maintains the Plaintiffs' efforts to rebuff his collection activities were frivolous and vexatious.  While Plaintiffs' claims focus on the correspondence sent by Defendant and Defendant's counterclaims focus on the court and administrative proceedings initiated by Plaintiffs, the claims and counterclaims all relate to the lawfulness of the collection of the debt.  They certainly are logically related, will involve some of the same evidence, raise some of the same legal and factual issues, and at least implicate res judicata concerns. The Court finds that these first three counterclaims are compulsory.

Defendant's "Set-off and/or Recoupment" counterclaim asserted in Count IV, however, does not have quite the same relationship to Plaintiffs' claims.  That counterclaim deals not with Defendant's collection efforts but simply with the validity of the underlying judgment obtained by Defendant.  The Court concludes that this counterclaim is permissive, not compulsory. See Ayres v. Nat'l Credit Mgmt. Corp., No. 90-5535, 1991 WL 66845, at *1 (E.D. Pa. Apr. 25, 1991) (concluding that counterclaim was permissive where it "centers on evidence regarding the existence of a contract, the failure to perform on a contract, or other circumstances leading to the creation of a

5

valid debt [but t]he [FDCPA claim] centers on evidence regarding the improprieties and transgressions . . . in the procedures used to collect the debt, regardless of the debt's validity").

Because Count IV is a permissive counterclaim asserting a state law cause of action, the Court must consider whether it properly falls within this Court's supplemental jurisdiction under 28 U.S.C. § 1367.[2]  Although appellate courts in several other circuits have held that supplemental jurisdiction under § 1367 may extend to permissive counterclaims in some circumstances, this Court has recently noted that it remains the law of the Fourth Circuit that "federal courts may not exercise supplemental jurisdiction over permissive counterclaims." Ramirez v. Amazing Home Contractors, Inc., Civ. No. JKB-14-2168, 2014 WL 6845555, at *5 (D. Md. Nov. 25, 2014) (collecting

---

[2] This section provides in relevant part that:

   Except as provided in subsections (b) and (c) or as
   expressly provided otherwise by Federal statute, in
   any civil action of which the district courts have
   original jurisdiction, the district courts shall have
   supplemental jurisdiction over all other claims that
   are so related to claims in the action within such
   original jurisdiction that they form part of the same
   case or controversy under Article III of the United
   States Constitution.

28 U.S.C. § 1367(a).

cases).  Thus, Count IV must be dismissed for lack of jurisdiction.[3]

Turning to the merits of the other three counterclaims, to survive a motion to dismiss under Rule 12(b)(6), a claim or counterclaim must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  Such determination is a "context-specific task," Iqbal, 556 U.S. at 679, in which the factual allegations of the complaint or counterclaim must be examined to assess whether they are sufficient "to raise a right to relief above the speculative level."  Twombly, 550 U.S. at 555.  "[A] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff [or counter-plaintiff] in weighing the legal sufficiency of the complaint."  Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted).  Such deference, however, is not accorded

---

[3] Even were the Court to conclude that there was jurisdiction over Counterclaim IV under the "case or controversy" test of § 1367(a), it would decline to exercise jurisdiction under 1367(c)(4), which permits it to do so, "in exceptional circumstances, [if] there are [] compelling reasons for declining jurisdiction."  "[S]trong policy reasons exist to prevent the chilling effect of trying FDCPA claims in the same case as state law claims for collection of the underlying debt," and this policy satisfies the exceptional circumstances of § 1367(c)(4).  Sparrow v. Mazda Am. Credit, 385 F. Supp. 2d 1063 (E.D. Cal. Aug. 26, 2005).

to labels and legal conclusions, formulaic recitations of the elements of a cause of action, and bare assertions devoid of further factual enhancement. Iqbal, 556 U.S. at 678.

In their motion to dismiss, Plaintiffs treat Counts I and II as identical. ECF No. 8-1 at 3-4. Defendant asserts that Count II "is a different tort entirely" than Count I. ECF No. 9. To the extent that the Court can discern a difference between the claims asserted in the two counterclaims, it would appear that Count I is focused more specifically on the alleged interference with the contractual relationship between Defendant and Mr. Barwick, see ECF No. 5 ¶ 50, whereas Count II asserts more general interference with Defendant's ability to conduct his debt collection business. See id. ¶ 54. Thus, it would seem that Count I is more in the nature of a claim for wrongful interference with an existing contractual relationship whereas Count II is more in the nature of a claim for interference with prospective economic relationships. See Alexander & Alexander Inc. v. B. Dixon Evander & Assoc., Inc., 650 A.2d 260, 268 (Md. 1994) (discussing these two forms of the tort of wrongful interference with contractual or business relationships).

Regardless of the minor differences between the two claims, the elements that need to be established are similar and, here, both claims fail for similar reasons. Under Maryland law, the elements of tortious interference with contract are: "'1)

8

existence of a contract between plaintiff and a third party; 2) defendant's knowledge of that contract; 3) defendant's intentional interference with that contract; 4) breach of that contract by the third party; and 5) resulting damages to the plaintiff.'" Ultrasound Imaging Corp. v. Am. Soc'y of Breast Surgeons, 358 F. Supp. 2d 475, 479-80 (D. Md. 2005) (quoting Fraidin v. Weitzman, 611 A.2d 1046, 1057 (Md. Ct. Spec. App. 1993)).  The elements to establish a claim for malicious interference with the right to pursue a lawful business, trade or occupation are: "(1) Intentional and willful acts; (2) calculated to cause damage to the plaintiffs in their lawful business; (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendants (which constitutes malice); and (4) actual damage and loss resulting." Beane v. McMullen, 291 A.2d 37, 47 (1972) (quoting Willner v. Silverman, 71 A. 962, 964 (Md. 1909)).

Both claims fail because Defendant has failed, inter alia, to allege the type of damage that would support such claims.  As to Count I, there is no allegation that Defendant's contract with Mr. Barwick was even breached.  In fact, Defendant readily admits that he has already obtained a judgment in his favor based upon the debt assigned to him by Mr. Barwick.  As to Count II, there is no allegation that Defendant has suffered any loss

9

of business because of Plaintiffs' conduct.  Even in the opposition to Plaintiffs' motion Defendant stops short of representing that he suffered any actual damage to his business, asserting instead that "Plaintiffs <u>hoped</u> to create a burden on the Defendant's business" and made a "deliberate <u>attempt</u> to affect the relationship between Defendant and his clients."  ECF No. 9 at 4 (emphasis added).

The only "damages" mentioned in the Counterclaim or in the opposition are the court costs, expenses, and attorney's fees expended in response to "Plaintiffs' vexatious and litigious behavior."  ECF No. 9 at 4.  As Plaintiffs correctly note, however, any claim for these types of damages should have been brought in the previous actions by way of motions for sanctions or for the award of attorneys' fees.  These are not the type of damages that would support the torts asserted in Counts I or II.

In moving to dismiss Count III, Plaintiffs note that to assert a claim for abuse of process under Maryland law, "'a plaintiff must allege that he was unlawfully arrested or his property unlawfully seized.'"  ECF No. 8-1 at 5 (quoting <u>Campbell v. Lake Hallowell Homeowners Ass'n</u>, 852 A.2d 1029, 1044 (Md. Ct. Spec. App. 2004)); <u>see also</u>, <u>One Thousand Fleet Ltd. P'ship v. Guerriero</u>, 694 A.2d 952, 960 (Md. 1997) ("A cause of action for civil abuse of process in Maryland requires that the plaintiff establish that an arrest of the person or a seizure of

property of the plaintiff resulted from the abuse of process."). Defendant makes no response in his opposition regarding this claim and thus it would appear to be abandoned. See Grant-Fletcher v. McMullen & Drury, P.A., 964 F. Supp. 2d 514, 525 (D. Md. 2013) (opining that the plaintiff appeared to have abandoned claims by not responding to arguments directed at those claims in the defendant's motion).  Even if not abandoned, the claim must be dismissed as Defendant does not allege either an unlawful arrest or seizure in the Counterclaim.

For these reasons, the Counterclaim will be dismissed in its entirety.  An Order consistent with this Memorandum will issue.

```
                       _____/s/_____
                       William M. Nickerson
                       Senior United States District Judge
```

DATED: July 21, 2015